J-S43002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.S., FATHER | : | No. 668 MDA 2019 |

Appeal from the Decree Entered March 28, 2019
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No(s):  A-5-2019

BEFORE:   GANTMAN, P.J.E., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.E.:              **FILED SEPTEMBER 06, 2019**

Appellant, T.S. ("Father"), appeals from the decree entered in the Lackawanna County Court of Common Pleas, which terminated Father's parental rights to his minor child, M.S. ("Child").  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts of this appeal.  Therefore, we have no need to restate them.  We add, on October 12, 2017, the Lackawanna County Children and Youth Services ("Agency") learned: Father may have kidnapped Child and did not have formula for Child; T.S. ("Mother") admitted using illicit drugs; and Father tested positive for marijuana and cocaine.  That same day, the court entered a protective custody order, upon the Agency's petition, and placed Child in kindship care.  Subsequently, the court adjudicated Child dependent on November 6, 2017.

The Agency filed a petition to terminate parents' parental rights to Child on January 24, 2019.  On March 25, 2019, the court conducted a termination

_____

* Former Justice specially assigned to the Superior Court.

hearing as to both parents, where the court heard testimony from caseworker Rebecca Brojack and visitation worker Jennifer Radzwillowicz. At the hearing, one attorney represented Child as both her guardian *ad litem* ("GAL") and legal counsel, and indicated there was no conflict between Child's legal and best interests in light of her young age.[1] The court terminated parents' parental rights to Child by decrees dated March 25, 2019, and entered March 28, 2019. On April 24, 2019, Father timely filed a notice of appeal and contemporaneous concise statement of errors complained of on appeal per Pa.R.A.P. 1925(a)(2)(i).[2] Father's notice of appeal referenced both relevant dependency and adoption trial court docket numbers.

On June 14, 2019, this Court issued a rule to show cause why Father's appeal should not be quashed for failure to comply with **Commonwealth v. Walker**, ___ Pa. ___, 185 A.3d 969 (2018). Appellant filed a response on June 20, 2019, explaining he intended to appeal only from the order

_____

[1] Child was 18 months old at the time of the termination hearing. **See In Re: T.S.**, ___ Pa. ___, 192 A.3d 1080 (2018) , *cert. denied*, ___ U.S. ___, 139 S.Ct. 1187, 203 L.Ed.2d 220 (2019) (holding appointment of second counsel for child, in contested termination proceedings, is not required to represent separate legal interests of child, where child's legal interests and best interests do not diverge; due to child's young age (less than three years old), presumption exists that child was too young to express subjective preferred outcome of termination proceedings; therefore attorney-GAL could fulfill statutory mandate for appointment of counsel and represent both best interests and legal interests of child).

[2] Mother did not file a notice of appeal and is not a party to this appeal.

terminating his parental rights to Child, which the court entered at the adoption docket number. On June 25, 2019, this Court discharged the rule to show cause and deferred the matter to the merits panel.[3]

Father raises two issues for our review:

> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR MANIFESTLY ABUSED ITS DISCRETION IN DETERMINING THE AGENCY SUSTAINED ITS BURDEN OF PROVING THE TERMINATION OF FATHER'S PARENTAL RIGHTS IS WARRANTED UNDER SECTIONS 2511(A)(1) AND/OR 2511(A)(2) OF THE ADOPTION ACT?
>
> EVEN IF THIS COURT CONCLUDES THE AGENCY ESTABLISHED STATUTORY GROUNDS FOR THE TERMINATION OF FATHER'S PARENTAL RIGHTS, WHETHER THE TRIAL COURT NEVERTHELESS ERRED AS A MATTER OF LAW AND/OR MANIFESTLY ABUSED ITS DISCRETION IN DETERMINING THE AGENCY SUSTAINED ITS ADDITIONAL BURDEN OF PROVING THE TERMINATION OF FATHER'S PARENTAL RIGHTS IS IN THE BEST INTERESTS OF…CHILD?

(Father's Brief at 10).

As a prefatory matter, issues not raised in a Rule 1925 concise statement of errors will be deemed waived. *Lineberger v. Wyeth*, 894 A.2d 141 (Pa.Super. 2006). *See also In re L.M.*, 923 A.2d 505 (Pa.Super. 2007) (applying Rule 1925 waiver standards in family law context). "Rule 1925(b) waivers may be raised by the appellate court *sua sponte*." *Commonwealth*

---

[3] Father's concise statement and appellate issues demonstrate he is challenging on appeal only the order terminating his parental rights to Child. Thus, we see no jurisdictional impediments to our review under *Walker, supra* (requiring separate notices of appeal from single orders which resolve issues arising at separate trial court docket numbers).

*v. Hill*, 609 Pa. 410, 428, 16 A.3d 484, 494 (2011).

Here, in his first issue on appeal Father challenges the termination of his parental rights pursuant to Sections 2511(a)(1) and (a)(2) of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938. Father failed to raise in his concise statement, however, any claim regarding termination of his parental rights to Child under Section 2511(a)(2). Thus, Father failed to preserve any claim regarding Section 2511(a)(2), and his first issue is waived to the extent he attempts to present argument related to Section 2511(a)(2). ***See Lineberger, supra***.

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

***In re Z.P.***, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting ***In re I.J.***, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> ***In re B.L.W.***, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

Furthermore, we note that the trial court, as the finder

- 4 -

of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

The Adoption Act governs the involuntary termination of a parent's parental rights to a child and provides, in relevant part, as follows:

### § 2511. Grounds for involuntary termination

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his… parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his...conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his...parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The

court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond."

*Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his…rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his…ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations and quotation marks omitted).

"[A] parent's basic constitutional right to the custody and rearing of his…child is converted, upon the failure to fulfill his…parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Andrew J. Jarbola, III, we conclude Father's remaining claims merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, dated May 20, 2019, at 4-7) (finding: **(1)** Father failed to attend more than five visits with Child within six months before Agency filed petition to terminate his parental rights; during visits Father attended, he required significant redirection to interact

appropriately with Child; Father failed to develop bond with Child and did not complete any parenting classes, which would enable him to perform his parental duties; lastly, Father failed to maintain sober lifestyle to ensure Child would be safe if returned to Father's custody and care; **(2)** Agency proved Child thrives within loving, foster home, and has strong, loving bond with her foster parents and foster siblings; Child refers to foster parents as mom and dad; at conclusion of March 2019 hearing, attorney/GAL for Child indicated to court there was no conflict of interest between Child's best interest and legal interest, due to Child's age; Child's counsel argued for termination and opined it was in Child's best interests; chief among concerns for Child were Child's well-being, permanency, and consistency; termination of Father's parental rights served Child's best interests).  The record supports the trial court's decision.  Accordingly, we affirm on the basis of the trial court opinion.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2019



| IN RE: | : | IN THE COURT OF COMMON PLEAS |
| | : | OF LACKAWANNA COUNTY |
| RELINQUISHMENT OF M.S., | : | |
| | : | ORPHANS' COURT DIVISION |
| A MINOR | : | |
| | : | NO. A-5-2019 |
| | : | 148 DP 2017 |
| | : | |

## OPINION PURSUANT TO PA.R.A.P. 1925

JARBOLA, J.

## I.    INTRODUCTION

The Lackawanna County Office of Youth and Family Services (hereinafter "Agency") petitioned this Court to terminate the parental rights of T.S. ("Father") and T.S. ("Mother") with respect to minor child M.S. (D.O.B. 09/ /2017). A hearing on the Agency's petition occurred on March 25, 2019. This Court weighed and considered the relevant evidence submitted and terminated both parents' rights. With regard to Father        , this Court granted the Agency's petition for the reasons that follow.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Father                        and                        Mother   are the natural parents of M.S. (hereinafter "Minor Child"). The minor child was initially placed in kinship foster care after both parents testified as to their drug use, and Father tested positive for the same. (N.T., March 25, 2019, pp. 8). The minor child was declared dependent by the Court on November 6, 2017. Id. at 9.

Since the minor child's placement over eighteen months ago, Father has failed to comply with the Agency's service recommendations/directives. While Father claims he has secured stable housing, it is evident that he has not successfully completed parenting or domestic violence classes, submitted to the required number of drug screens, participated in Drug and

Alcohol Treatment Services (hereinafter "DATS"), or been consistent with visitation with the minor child – all of which were directed by the Agency. Id. at 10, 13.

As the minor child was adjudicated dependent at roughly three weeks of age, the Agency required that Father participate in parenting classes. Id. at 9. The Agency made two referrals to Father's Group in Lackawanna County but Father was unsuccessfully discharged from the parenting class both times for failure to attend. Id. at 14. The Agency also made a referral for safe care classes at Mother and Father's request. Id. Safe care classes would have occurred in Father's home, thereby eliminating any potential issues with transportation; however, Father was again unsuccessfully discharged for noncompliance and lack of attendance. Id. at 33-34.

In addition to parenting classes, the Agency directed Father to attend and participate in domestic violence classes as well as Drug and Alcohol Treatment Services ("DATS"). Id. at 12-13. Once again, Father was unsuccessfully discharged from both programs for noncompliance. Id. In conjunction with his required attendance at drug and alcohol treatment sessions, Father was directed to submit to a total of 225 drug screens for the Agency over the course of the minor child's dependency. Id. To date, Father has only submitted to 16 drug screens, half of which yielded a positive result. Id.

Regarding Father's contact with the minor child, Father has been on a biweekly visitation schedule throughout the child's dependency. Id. at 48. Despite that schedule, Father has been unable, by the Agency's standards, to progress beyond biweekly visitation; been inconsistent in his attendance of visits; and has failed to appear multiple times over the course of the minor child's dependency. Id. Notably, Father had not seen the minor child since November of 2018, prior to the Agency filing its Petition to Terminate. Id. at 48-49. While Father has participated

2

in activities like feedings and diaper changes at those visits he did attend, he also required a great amount of redirection to interact with the minor child more. Id. at 15, 49.

The minor child, on the other hand, is thriving. She demonstrates a strong, loving bond with her foster parents, referring to them as mom and dad. Id. at 23-24. She is healthy and well-adjusted and has developed a good rapport with her foster siblings. Id. For these reasons, and due to Father's history, at the conclusion of the March 2019 hearing, the Guardian ad Litem argued fervently for termination in favor of permanency and consistency for minor child. Id. at 63-64. The Court agreed with the Guardian ad Litem and parental rights were terminated. Id. at 65. Upon termination of Father's parental rights, the Appellant in the instant case filed a Notice of Appeal and Concise Statement of Errors Complained Of on April 24, 2019.

## III. DISCUSSION

Parental rights with respect to a child may be involuntarily terminated on any one of the grounds set forth in 23 Pa.C.S.A. §2511(a)(1)-(9). A two-pronged analysis is required before terminating a parent's rights. 23 Pa.C.S.A. §2511; In Re L.M., 923 A.2d 505, 511 (Pa. Super. 2007). First, the Court must find, by clear and convincing evidence, that the parent's conduct warrants the termination of parental rights. Id. Thus, the Court must find that the party seeking termination has met its burden in demonstrating the applicability of one of the nine grounds enumerated in 23 Pa.C.S.A. §2511(a). Id. Next, the Court must determine whether terminating the parent's rights would be in the best interest of the child. Id.; 23 Pa.C.S.A. §2511(b).

3

**a. Did the Court err as a matter of law and/or manifestly abuse its discretion in terminating Father's parental rights pursuant to 23 PA.C.S.A. §2511(a)(8)?**

Pursuant to 23 Pa.C.S.A. §2511(a)(8), parental rights regarding a child may be terminated where:

> [t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist . . . .

Where a TPR is sought on this ground, "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition. 23 Pa.C.S.A. §2511(b).

In the case at hand, the minor child was removed from Mother and Father's care and placed in kinship foster care after both parents testified before Judge Braxton of Lackawanna County that they were using "molly" and Father tested positive for marijuana and cocaine. (N.T., March 25, 2019, pp. 8). The minor child was declared dependent by the Court on November 6, 2017, more than 18 months ago, and this Court is satisfied that the Agency has proven by clear and convincing evidence that the conditions which led to minor child's removal continue to exist. Id. at 8-9, 65. Although Father has managed to secure safe housing for the minor child, Father has failed to comply with the Agency's service directives, failed to maintain a sober lifestyle, and failed to establish a bond with the minor child.

Primarily, throughout the entirety of the minor child's dependency, Father was required to maintain a sober lifestyle. As such, he was directed to submit to drug screening a total of 225 times in order to provide confirmation of the same; however, Father only completed 16 of those 225 screens, yielding a positive result half of the time. Id. at 12-13. Father was also unsuccessfully discharged from his outpatient drug and alcohol classes due to noncompliance

4

and failure to attend. Originally, the Agency set up drug and alcohol classes through Lackawanna County DATS and later transferred them to Wyoming Valley Drug and Alcohol when Father and Mother moved; however, Father did not attend either program. Id. at 12-13. Father instead chose to disregard the Agency's directives regarding drug and alcohol screening and services, demonstrating an utter unwillingness to cooperate as directed or to put the minor child's interests before his own.

This Court also finds it noteworthy that Father has failed to develop an appropriate bond with the minor child. Id. at 17, 50. Father has been inconsistent in his visits with the minor child since the beginning of her dependency. Starting October 4, 2018, through the date of filing the Petition to Terminate Father's Rights, visits were scheduled with the minor child twice a week; however, Father ultimately only attended five visits. Id. at 48-49. In fact, as of the date of the March hearing, and prior to the Agency's filing of the Petition to Terminate, Father had not attended a visit with the minor child since November 26, 2018. Id. Further, at those visits Father did attend, he did not appear to have a bond with the minor child. Id. at 49, 57. While Father did participate in activities like feedings and diaper changes, he required redirection on numerous occasions from the caseworker to interact more with the child. Id. At the March hearing date, the caseworker testified that there was little to no bond between Father and the minor child, such that she was in agreement with terminating Father's parental rights. Id. at 49.

This Court does note that, in line with the Agency's directives, Father has actively taken steps to secure stable housing. Id. at 40. Father currently rents a room at a home in Wilkes-Barre, and, although the home is structurally sound, the Agency explained to Father that they would need the names, birthdates, and social security numbers of the other individuals residing in the home in order to run security checks and ensure the minor child is safe. Id. Father

5

allegedly indicated that it would not be a problem to provide the agency with that information but ultimately failed to do so, again demonstrating an utter unwillingness to cooperate as directed or to put the minor child's interests before his own. Id.

Father argues that he experienced medical issues that prevented him from acting in compliance with the Agency's directives. Id. at 14-15; 40-41. He alleges that he suffered a stroke roughly halfway through the minor child's dependency as well as developed MRSA in January of 2019, both of which prevented him from seeing the minor child and participating in his required classes/programs. Id. However, it was testified to at the March 2019 hearing that Father has failed to provide signed medical consents or any medical records in order to confirm his claims or diagnoses. Id. Further, the caseworker testified that if Father had simply taken the mandated universal precautions, then he still would have been able to attend the scheduled visits with the minor child despite having MRSA. Id. at 56.

b. **Did the Court err as a matter of law and/or manifestly abuse its discretion in terminating Father's parental rights pursuant to 23 PA.C.S.A. §2511(a)(1)?**

Turning to 23 Pa.C.S.A. §2511(a)(1), the Court may terminate an individual's parental rights where "[t]he parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition [of termination], either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties."

As discussed above, Father has not attended more than five visits with the minor child within the six months preceding the Agency's Petition to Terminate Father's Parental Rights. (N.T., March 25, 2019, pp. 48-49, 57). Further, at those visits Father did attend, he required a great amount of redirection to appropriately interact with the minor child. Id. Father has also still not developed a bond with the minor child nor has he completed any parenting classes that would allow him to appropriately perform his parental duties. Id. at 49, 57. Lastly, Father has

6

not proven that he is maintaining a sober lifestyle such that the minor child would be safe if returned to Father's custody and care. Id. at 12-13.

### c. Did the Court err as a matter of law and/or manifestly abuse its discretion in determining termination of Father's parental rights is in the best interests of the child?

Based on the foregoing, this Court finds the Agency has met it burden of establishing by clear and convincing evidence that Father's conduct warrants termination of his parental rights. Id. at 64-65. The Court must now turn to consideration of the second prong of its analysis. By statute, "primary consideration to the developmental, physical and emotional needs and welfare of the child" must be given. 23 Pa.C.S.A. §2511(b).

The Court is satisfied that the Agency has proven that the minor child is currently thriving within a loving home. Further, the Agency has demonstrated that the minor child has a strong, loving bond with her foster parents. (N.T., March 25, 2019, pp. 23-24). In fact, the minor child refers to her foster parents as mom and dad. Id. She also appears to have developed a bond with her foster siblings – she knows each sibling's name and enjoys spending time with them. Id.

At the conclusion of the March 2019 hearing in this case, the Attorney for the minor child indicated to the Court that she had no conflict of interest serving as both the child's attorney and the child's Guardian ad Litem due to the child's age. Id. at 63. The Guardian in this case thn argued for termination and opined that it would indeed be in the minor child's best interests. Id. at 63-64. Chief among the Guardian's concerns for the minor child's well-being, as well as this Court's, is the sense of permanency and consistency that the minor child is no doubt entitled to. Id. at 63-64. As such, this Court found that termination of Father's parental rights would best serve the minor child's interests.

7

**d. Did the Court err as a matter of law and/or manifestly abuse its discretion in finding that the conditions that led to removal have not been remedied and reunification of parent and child was not imminent at the time of the hearing?**

Following the hearing, Father alleges on appeal that this Court erred as a matter of law in terminating his rights by finding that the conditions that led to the removal have not been remedied and reunification of parent and child were not imminent at the time of hearing. As stated above, the conditions that led to the minor child's removal have not been remedied as Father has failed to drug screen the required number of times for the Agency and the times that he did screen resulted in positive results half of the time. Id. at 12-13. Additionally, Father has failed to complete any of the requisite parenting, drug and alcohol, or domestic violence classes recommended by the Agency. Id. Further, there is no imminence to reunite the minor child with Father as the minor child is thriving with her foster parents and recognizes them as her parents, even referring to them as mom and dad. Id. at 23-24.

## I.     CONCLUSION

As this Court determined that the Agency met its burden and for the foregoing reasons, the Court terminated Father's parental rights pursuant to 23 Pa.C.S.A. §2511. This Court agreed that the minor child deserves permanency and termination of Father's rights was in the best interests of the minor child.

BY THE COURT:

_____, J.
ANDREW J. JARBOLA, III

8